## H. F. MUSTAIN, EXR., v. H. G. STOKES ET AL.

### Decided January 28, 1897.

Vendor's Lien—Subrogation—Mortgage to Secure Money Advanced to Discharge.

S. and wife received from W. money to discharge a vendor's lien on their homestead, and before paying off the lien sent to W. their notes for the amount, reciting that they were given for the purchase money, together with their deed to W., reciting the same amount as cash consideration, and one to be executed by W. to them reconveying the land in consideration of their notes to W. In a suit by the executor of W. to enforce the lien, Held:

1. The papers on their face showed that plaintiff was entitled to enforce the vendor's lien on the land in question in the absence of evidence tending to support a contrary conclusion, and the trial court should have given an instruction requested, to that effect. (Pp. 362, 363.)

2. Under the proof in this case (for which see opinion) there was no evidence contradicting the legal effect of the papers executed by defendants. (P. 363.)

3. The statement in the notes sued on, of the fact that they were given to secure a part of the purchase money of the land described, is sufficient proof, of itself, to establish that fact, unless there be evidence to the contrary. (P. 362.)

4. The deed by S. and wife to W., and reconveyance, constitute a. mortgage, appearing from the face of the papers to be given to secure purchase money of the land, and prima facie valid, though the homestead rights of S. and wife had attached prior to its making. (P. 362.)

5. The recitals in the notes proved that the parties had agreed that the lender should be subrogated to the vendor's lien, and further evidence of that fact was superfluous, and evidence to prove a prior agreement to execute a mortgage was not necessary. (P. 363.)

ERROR to Court of Civil Appeals, Third District, in an appeal from Travis County.

Mustain, as executor of Waters, brought the suit and recovered judgment on the notes sued on, but was denied foreclosure of his lien. He appealed, and on the affirmance of the judgment by the Court of Civil Appeals obtained writ of error.

*T. W. Gregory* and *Von Rosenberg & Hewlett*, for plaintiff in error.— The notes sued on, the deed from appellees to Butler H. Waters, the deed from Butler H. Waters and wife to appellees, the letter written by H. G. Stokes to Butler H. Waters and wife, and the release from John H. Robinson, Jr., were all parts of the same transaction, were documentary evidence, and should have been construed by the court as subrogating appellant to the vendor's lien held by Robinson. Warhmund v. Merritt, 60 Texas, 27; Hicks v. Morris, 57 Texas, 662; Pridgen v. Warn, 79 Texas, 594; Soell v. Hadden, 85 Texas, 187; Shepherd v. White, 11 Texas, 357; Hilliard v. Hons, 37 Texas, 718; Gardner v. Stell, 34 Texas, 564; Whitaker v. Bledsoe, 34 Texas, 402; Adoue v. Jemison, 65 Texas, 683; 1 Green. on Ev. (13th ed.), 65, note.

The lien in this case at no time ceased to exist, and it must be assumed that the parties to this transaction intended to do what they did do.

An agreement to subrogate Butler H. Waters to the vendor's lien held by Robinson must necessarily be assumed from the uncontradicted evidence, and the finding of the jury against appellant on this point should

have been set aside because contrary to the evidence.  Hicks v. Morris, 57 Texas, 662; Warhmund v. Merritt, 60 Texas, 27; Pridgen v. Warn, 79 Texas, 594.

The vendor's lien held by Robinson passed to appellant by force of the circumstances under which the transaction was made.  Warhmund v. Merritt, 60 Texas, 27.

*Z. T. Fulmore*, for defendant in error.—Subrogation can only exist by an agreement, expressed or necessarily implied; and in this case, Waters having voluntarily advanced to appellee $1575, without any agreement or understanding, at the time the money was advanced, as to what was to be done with the money, the mere fact that appellee used it to pay part of a lien outstanding upon his homestead, will not subrogate Waters, or his representatives, to the rights of prior lien holders.  Hicks v. Morris. 57 Texas, 662; and other Texas authorities cited in appellant's brief; 67 Texas, 275; Beach on Eq. Juris., secs. 798, 801, 806, and the authorities cited.

There being no evidence of any agreement, expressed or implied, and the charge of the court fully covering this point, the case having been submitted to the jury and their verdict being in favor of defendants, it will not be disturbed.

In support of a motion for rehearing, which was overruled, counsel for defendant in error discussed and distinguished the cases of Hicks v. Morris, 57 Texas, 662; Garrett v. Bank, 79 Texas, 133; Loan Co. v. Blalock, 76 Texas, 89; and contended that the decision carried the doctrine of subrogation beyond any previous ruling.

BROWN, ASSOCIATE JUSTICE.—Plaintiff in error, as executor of Butler H. Waters, deceased, sued H. G. Stokes and wife on two promissory notes for $393.75 each, signed by the defendants, and sought to foreclose an alleged lien on a certain lot in the city of Austin, which constituted appellee's homestead at the time the notes were given.  Verdict and judgment were rendered against Stokes on the notes, but against the plaintiff in error as to his lien, which judgment was affirmed by the Court of Civil Appeals.

Plaintiff in error insists that the uncontroverted facts show that his testator, Butler H. Waters, was, by the transaction in question, subrogated to the vendor's lien on the lot described in the plaintiff's petition, and that the District Court erred in not instructing the jury to so find.

The Court of Civil Appeals made no finding of the facts in the case, and we must therefore resort to the record to ascertain what is the undisputed evidence upon this issue.

The following facts are established by uncontroverted testimony as shown by the statement of facts.

On the 23rd day of November, 1885, B. H. Waters, who lived in the State of Kentucky, sent to H. G. Stokes, at Austin, Texas, a draft for $1575, which draft H. G. Stokes received and applied to the payment, so

far as the sum would go, of four notes given by himself and wife, S. C. Stokes, to Henry Perkins, for $425 each, due respectively in one, two, three, and four years from date, dated June 27, 1885, bearing ten per cent interest from date, and on the face of each note retaining a vendor's lien on the land in question in this suit. On the 27th day of November, 1885, H. G. and S. C. Stokes executed four promissory notes, each payable to Butler H. Waters and Lou Anne Waters, each for $393.75, due respectively at one, two, three, and four years after date, bearing eight per cent interest from date until paid, reciting upon the face of each that it was given for the purchase money for parts of lots seven and eight in block 77 in the city of Austin, Travis County, Texas. On the same day, November 27, 1885, H. G. Stokes and wife executed to B. H. and Lou Anne Waters a deed for the land in question, reciting that they had received the consideration of $1575, which deed was filed for record December 7, 1885, in the office of the county clerk of Travis County. On the same day Stokes had prepared a deed from B. H. and Lou Anne Waters to H. G. Stokes and S. C. Stokes, reconveying to the latter the same land which Stokes and wife had conveyed to Waters and wife, reciting in the face of the deed a consideration of one dollar and the four notes given by Stokes and wife to Waters and wife and further reciting that a vendor's lien was retained upon the land, describing it, to secure the payment of the said notes. This deed was duly executed by Waters and wife in Kentucky on December 11, 1885, and recorded in Travis County February 9, 1886.

H. G. Stokes sent the notes made by himself and wife to Waters and wife and the deed from Waters and wife to Stokes and wife, with the following letter, to B. H. Waters in the State of Kentucky:

"Austin, Texas, Dec. 7, 1885.

"Dear Uncle and Aunt:

"I herewith enclose all papers in my possession regarding transfer of property to you.

"My deed to you has been filed with the Dist. Clerk and he will have it recorded some time in the next three or four days, he has so much ahead that he could not let me have it to send with the notes. However, you can both sign the deed I enclose from yourselves to us and hold it until I get your deed, when you can return all papers except the notes. I have got property all released up to date of your deed; our deed to you is absolute, so, until you sign the enclosed deed, property is in your name. It is a vital law question in Texas that married man, deeding property, must have signature of his wife acknowledged before proper officer, or else the deed is null and void. You will find embodied in the deed proper blank for Aunt Lou to acknowledge. I would wait until I got your deed to send these, but thought you might feel a little uneasiness at delay. I saw one of the best lawyers here, and he told me the most secure way for yourself and us was to deed the property to you and have you deed it back, after getting release from all previous holders. If at any time in the future we have extraordinary bad luck you can help us

by splitting the notes, making it easier on monthly payments, but I see no bad luck ahead; at present all looks bright. I think in a couple of years the property will be worth $3000; at any rate it is a good investment and the man who held my notes hated to give them up. Kate and children are all well and the weather is splendid. In your next, say if you would prefer monthly or yearly payments. I am right in the middle of business, so excuse haste: will write when I send you your deed, insert book and page in your deed to us in which our deed to you is recorded. You will see it is left blank. Love to all. I remain your aff. nephew,                                    · Henry G. Stokes."

On June 27, 1885, Henry J. Perkins and wife, Mildred, conveyed the land described in plaintiff's petition to H. G. Stokes and Sarah C. Stokes, for the consideration of $700 paid in cash and four notes of $425 each, being the same paid off by Stokes with the draft received from Waters, and to secure the payment of which notes the deed retained a vendor's lien upon the land. On the 5th day of February, 1886, John H. Robinson, Jr., executed a release to H. C. Stokes and wife of the lien of the four notes given by Stokes and wife to Perkins and wife on the land described in plaintiff's petition, acknowledging the payment of the said notes in full. This release was recorded in Travis County, the 9th day of February, 1886.

Lou Anne Waters died in February, 1888, and Butler H. Waters died in June, 1890, the plaintiff in error being appointed executor of the will by Butler H. Waters, and duly qualified and the will properly probated in this State. The following letter was written by Butler H. Waters to Mrs. H. G. Stokes:

                                   "Horse Cave, Ky., July 8, 1888.
"Mrs. H. G. Stokes, Austin, Texas.
     "My Dear Niece:
"As I am expecting to start to the Dawson Springs to-morrow I thought I would place these two notes in an envelope backed to you, for fear of some accident; these are yours, and if I don't fall sudden I expect to have them and other fixed better. I hope I will be able to attend to it myself. Your uncle, Butler H. Waters."

The two notes which first fell due, of those executed by Stokes and wife to Waters and wife, were marked paid and were not claimed in this suit, but they were not found in the envelope as stated in the letter above copied.

· At the time the notes sued on were given, the land in question was occupied by H. G. Stokes and wife as a homestead, claimed by them under the deed from Henry J. Perkins and wife, as above stated. There is no controversy over any of the facts herein stated, and the question presented for our consideration is, should the District Court have instructed the jury, upon this statement of the evidence, to find a verdict in favor of the plaintiff, as to his right to foreclose the vendor's lien upon the land described in the petition?

The District Court refused to give to the jury, at the request of the plaintiff, the following instruction: "The jury are instructed that the notes executed by the defendants, of date November 27, 1885, the deed from the defendants to B. H. and Lou Ann Waters, the deed to defendants of same date, the letter written by Henry G. Stokes, dated December 7, 1885, and the release from John H. Robinson, Jr., are all to be construed together as one transaction, and this transaction had the effect of subrogating B. H. and Lou Ann Waters to the lien held by Jno. H. Robinson, Jr., upon the property on which the lien is asserted; and you will therefore find for the plaintiff for the principal, interest and attorney's fees provided for in the two notes sued on, with foreclosure of the lien asserted, upon the property described in plaintiff's petition."

A court should not direct the jury what verdict to return upon an issue unless the evidence is undisputed, and of that conclusive nature that leaves no room for ordinary minds to differ as to the conclusion to be drawn from it. (Choate v. Railway, 37 S. W. Rep., 319, and authorities cited.) If under the evidence in this case the jury could have found that the lien did not exist, the charge was properly refused, otherwise it should have been given.

To entitle the plaintiff in error to have the judgment reversed for the failure of the district judge to give the charge requested, the undisputed evidence must establish the following propositions:

First. That the defendants' homestead was incumbered by a debt secured by a valid lien, and that the money represented by the notes sued upon was loaned by plaintiff's testator to the defendants for the purpose of discharging that debt, and that the debt which incumbered the homestead was in fact discharged with the moneys so loaned to the defendants. The foregoing propositions are not controverted.

Second. That it was intended by the parties that the lender should be secured in the repayment of the money loaned by a lien upon the land. It is claimed by the defendants in error that the evidence does not sustain the last proposition to the exclusion of a difference of opinion as to its effect.

The statement in the notes sued upon of the fact that they were given to secure a part of the purchase money of the land described is sufficient proof of itself to establish that fact, unless there be evidence to the contrary. Garrett v. Bank, 79 Texas, 133.

The deed made by Stokes and wife conveying the land in question to Waters and wife and the reconveyance of it by the latter to the former parties constitute a mortgage to secure the notes described in the deed from Waters and wife to the defendants. It appearing upon the face of the papers that the mortgage was given to secure a part of the purchase money of the land, it was prima facie valid, although the homestead rights of the defendant had attached to the land prior to the making of the mortgage. Hicks v. Morris, 57 Texas, 658; Loan Co. v. Blalock, 76 Texas, 89.

It would have been superfluous to offer evidence to show that the par-

ties had agreed or intended that the lender should be subrogated to the vendor's lien upon the land; the recitals in the notes proved that fact. Nor was it necessary to prove a prior agreement that the defendants should execute a mortgage upon the land, their homestead, to secure the repayment of the money loaned to them for the purpose of discharging the debt which held a lien upon it; because the execution of the mortgage established both the agreement and the intent. It would be just as reasonable to require other proof that the defendants had agreed to pay the money specified in the notes as to require evidence, in addition to the recitals in the notes, to prove that the sum specified represented the original purchase money of the land; because the promise to pay and recitals rest alike upon the written statement of the defendants; the only difference being that the promise to pay cannot be contradicted or explained by parol testimony, whereas the recital of a fact in the note is not conclusive, but prima facie evidence of that fact, and may be explained or contradicted. The making of the mortgage is likewise the best evidence of the intention to give a lien upon the land to secure the payment of the notes. No proof of the prior agreement to execute the mortgage could have given any strength to its legal effect.

The papers upon their face showed that plaintiff was entitled to enforce the vendor's lien upon the land in question, and if there was no evidence tending to support a contrary conclusion, the judgment must be reversed for the refusal of the court to give the charge requested.

There is not a fact or circumstance shown by the evidence in this case which contradicts the legal effect of the papers executed by the defendants. On the contrary, all the evidence which bears upon the question supports the plaintiff's claim to a lien upon the land.

The letter written by Stokes to Waters, dated the 27th day of November, 1885, in which he enclosed to Waters the notes sued upon and stated that the deed conveying the land to Waters and wife had been executed and filed for record, also enclosing a reconveyance to himself and wife of the land, shows that the papers were executed within one or two days of the time that the draft was received and more than a month before the debt held by Robinson for the purchase money was actually discharged with the money borrowed. Stokes in his letter states that he sends these papers promptly lest Waters might be uneasy at the delay, and explains that the manner of securing the debt is adopted upon the advice of a good lawyer as being the best arrangement for both parties. The promptness with which these papers were executed and forwarded justifies the conclusion that it was done in accordance with a previous understanding, and the manner in which the debt is secured, with the recital in the notes of the fact that they represent the purchase money upon the homestead, is the very best method that could be adopted for securing the money loaned by a lien upon the land, thus subrogating the lender to the right of the holder of the vendor's lien. The statements contained in the letter from Stokes to Waters were evidently made to show that a previous understanding had been fully and promptly complied with. The acts

performed by Stokes and wife in executing the papers were just such as one would perform who had agreed to secure the money by a valid lien on the land, and just such as a good lawyer familiar with the laws of Texas would advise as a compliance with that agreement. The acts are consistent with the existence of the intent to give this security, and inconsistent with any other intention.

If in fact the money was loaned on the personal responsibility of the defendants and there was no intention that it should be secured upon the homestead, it devolved upon defendants, in view of the recitals in the notes, to show the facts which would render it unlawful for them to secure the debt by a mortgage upon their homestead.

It is asserted on the part of defendants in error that it was not intended, by the recitals in the notes, to state that they were given for the original purchase money of the land, but that the recitals referred to the sale from Waters and wife to Stokes and wife. There is no evidence to support such a contention. The transaction between Stokes and wife and Waters and wife constitutes a mortgage, and no vendor's lien could arise out of the transaction. Therefore it could not be said truthfully that the notes were given to secure a lien which arose out of a sale from Waters and wife to the defendants, because there was no such sale, but there was a valid vendor's lien existing upon the land, and it was a lawful and proper thing for the defendants to secure upon their homestead the money with which they had discharged the original debt which held that lien.

There is no evidence to show that Waters and wife intended at the time they sent the draft to make a present of the money to Mrs. Stokes. The facts all show that the parties regarded it as a debt to be secured and to be paid in the future. That Waters gave his niece two of the notes and may have intended to give her the others does not tend to sustain a proposition that it was originally intended as a gift. Under the evidence in this case, there was no room for court or jury to arrive at a different conclusion than that the plaintiff was entitled to have the vendor's lien foreclosed upon the land, and this was a proper case for the court to have informed the jury as to the legal effect of this testimony and to have directed them to return a verdict in accordance with the legal rights of the parties.

From the record it does not appear that the notes given by Stokes and wife to Perkins provided for attorney's fees, and, if that be the case, the plaintiff is not entitled to have a foreclosure upon the land for the attorney's fees provided for in the notes sued upon. Loan Co. v. Blalock, 76 Texas, 90.

Because the District Court erred in refusing to give the charge requested by plaintiff and the Court of Civil Appeals erred in affirming the judgment, the judgments of both courts are reversed and this cause is remanded to the District Court for trial in accordance with this opinion.

*Reversed and remanded.*