## David M. Clarkson et al. v. L. H. Graham.

Decided May 31, 1899.

**1. Practice in Trial Court—Opening and Conclusion.**

An admission that plaintiff has a good cause of action to recover the premises sued for, or to recover the three vendor's lien notes also sued on, with foreclosure of same, except so far as he may be defeated by the facts of the answer, will not entitle defendant to open and conclude the argument, where the petition asks for further alternative relief, by subrogation, upon yet other prior notes secured by the deed of trust.

**2. Lien—Substitute Invalid and Original Enforced.**

A creditor holding a valid deed of trust executed by a widow, who, after the latter had remarried, canceled such deed and the notes it secured, accepted an absolute conveyance of the property, and reconveyed the same to her, reserving a vendor's lien which is unenforceable because the transaction was in reality a mortgage and the property was at that time homestead, may enforce the original deed of trust, and his assignee will be subrogated to the same right.

**3. Practice on Appeal—Attorney Fees—Record.**

Where, in an action on a deed of trust securing a note, the motion for new trial below recognizes that the note provided for attorney fees, and the statement of facts does not clearly negative that there was such provision, a judgment including such fees will not be revised on appeal.

Appeal from Bexar. Tried below before Hon. J. L. Camp.

*T. M. Paschal* and *H. C. Carter,* for appellants.

*W. W. King* and *Upson & Newton,* for appellee.

JAMES, Chief Justice.—The action was originally in trespass to try title to certain property, brought by Graham, but was changed into a foreclosure suit.

The amended petition, besides alleging title in plaintiff, alleges a deed of trust upon the property executed to Mrs. Clarkson for herself as independent executrix of the estate of C. H. Merritt, deceased, on June 29, 1892, to secure her note for $3000, which provided for certain interest and attorney's fees, which notes were sold by Francis Smith to the Investors' Mortgage Security Company.

Also a deed of trust on same property executed on April 26, 1893, by Mrs. Clarkson and D. M. Clarkson (she having since the first deed of trust married Clarkson) to secure an additional loan of $3000 represented by their notes, which notes were also transferred to the Investors' Mortgage Security Company. That on January 30, 1895, in pursuance of an arrangement between Mr. Smith and Mr. and Mrs. Clarkson, the former took up and paid said notes, paying therefor the sum of $6653.48, and the Clarksons conveyed the property to Smith in consideration of said sum; and that thereafter, on December 23, 1895, he reconveyed the property to said Kate M. Clarkson, on defendants' solicitation, for the sum of $12,142,—$4000 cash and three vendor's lien notes of $2714 each, maturing on or before the first day of November, 1896, 1897, and 1898 respectively, with certain interest and attorney's fee, and with provision that the holder might declare them all due upon nonpayment of any; that default was made in respect to the first note when due, and plaintiff being the holder of the notes exercised the option and declared them all due. That plaintiff purchased the notes by indorsement before maturity, paying valuable consideration, and also took an assignment from Francis Smith of his right, title, and interest in the property, including his superior title thereto. That plaintiff purchased the notes without notice of any of the defenses now urged by defendant; that the money so paid by Francis Smith for the land, and by plaintiff paid to Francis Smith for the notes, to wit, $8142, went to pay off and discharge the liens of said deeds of trust of June 29, 1892, and April 26, 1893. Plaintiff prays that, if he be held not entitled to recover in trespass to try title, that he have judgment for the notes held by him, with foreclosure of lien, and failing in this, that he be subrogated to all the rights of Francis Smith.

The answer set up (1) that the property was the homestead of defendants from the time of their marriage (April 3, 1893), and had continuously prior to this time for many years been the homestead of Merrit and his wife. (2) That the deeds of trust of June 29, 1892, and April 26, 1893, and the debts intended to be secured thereby, were settled, extinguished, and released in the transaction of 1895, wherein they conveyed the property to Francis Smith, and if this be not so, said deeds of trust gave no lien because the place was a homestead; and even if this be not so, this plaintiff can not recover on said deeds of trust because they were not executed for his benefit, and he is a stranger to said transaction and deeds of trust, and has not acquired any rights therein. (3) That Francis Smith and those claiming through him are estopped from claiming the benefits of the deeds of trust of 1892 and 1893, because his purpose in the transaction of 1895 was to circumvent the homestead claim of defendants as a defense by getting the notes sued upon in the form in which they were given, and getting them into the hands of one who would fraudulently figure as an innocent purchaser of them. (4) That the conveyance to Francis Smith in 1895, although apparently a deed, was a mortgage; that no sum of money was paid defendants as is recited in

the deed, and the notes given in that transaction represented the amount of the two previous loans with some additional advances of money made by Smith to defendants. (5) That plaintiff was not an innocent purchaser of the notes. Defendants prayed that plaintiff take nothing, for removal of cloud from their title, and for cancellation of the notes and the alleged superior title, etc.

The above statement of the pleadings is made because it appears to be the shortest way of exhibiting the issues. It is not necessary to state what is in the supplemental petition.

The effect of the verdict (in view of the charges) was to find that the transaction in 1895 constituted a mortgage of the property, and that Graham was not an innocent purchaser for value; also that when the second deed of trust—that of 1893—was given by Clarkson and wife, the property was in fact their homestead. Hence the verdict and judgment that plaintiff recover of Clarkson the full amount of the notes, but that a lien existed on the property for the sum of $5208.33 only, the amount secured by the deed of trust given in 1892, after Merritt's death and prior to the widow's marriage to Clarkson.

The demurrers presented to the petition were properly overruled. There was no error in refusing to permit defendant to open and conclude the argument. The admission filed was that plaintiff has a good cause of action to recover the premises, or to recover on the three notes sued on with foreclosure thereof, except so far as he may be defeated in whole or in part by the facts of the answer constituting a good defense. The amended petition asserts not only a cause of action on said three notes, but, in the alternative, on the notes given in 1892 and 1893. Consequently the admission was not sufficient.

The fifteenth assignment is that the court erred in refusing to give an instruction in effect that if the jury believed that the three notes sued on were not for purchase money for the property, but that it (the transaction of 1895) was a simulated transaction for the purpose of making it appear that they were purchase money notes, and were obtained by Smith for the purpose of evading the homestead laws, that Graham could in no event become a bona fide purchaser of the notes; but defendants would be entitled to set up the same defense against Graham as they could against Smith. The jury found, however, that Graham was not an innocent purchaser of the notes. As the jury also found the deed in 1895 to have been of the character of a mortgage, the matter mentioned in the sixteenth and seventeenth assignments need not be considered. And as the jury found the property to have been homestead when the second deed of trust was given in 1893 and in 1895, it is not necessary to notice the nineteenth assignment.

By the eighteenth assignment it is contended that the court erred in refusing to charge that if the three notes sued on do not really represent purchase money for defendant's homestead then Graham can not recover, unless the jury should further find that he was an innocent purchaser. The twenty-third assignment presents a similar theory thus: "The court

should have given the thirteenth special charge, because the evidence showed that Francis Smith had canceled and surrendered the deeds of trust of 1892 and 1893 and took in lieu thereof the instrument of January 30, 1895, and if he insisted upon such change and voluntarily released such deeds of trust, then the law would treat the deeds of trust as discharged by the new security, and in such event neither Francis Smith nor Graham would be subrogated to or could claim any lien by virtue of the deeds of trust." Also the twenty-fifth assignment as follows: "The court erred in refusing the fifteenth special charge, because if Francis Smith took the instrument dated January 30, 1895, in lieu of the deeds of trust of 1892 and 1893, and thereafter obtained the alleged vendor's lien notes for the purpose of evading the homestead law, then Francis Smith would be estopped to claim any rights under the said deeds of trust, and the plaintiff could claim no greater rights under the canceled deeds of trust than Francis Smith could have claimed." There are some other assignments presenting the same idea.

It is quite clear to our minds under the evidence and the findings that he was not an innocent purchaser; that Graham by the transfer of the notes and the transfer of the title Smith had in the property, took the place of Francis Smith. He was not entitled to anything that the latter was not, and he became entitled to what the latter had. Therefore we must deal with the case as if Francis Smith were the plaintiff. The question to consider is whether or not Francis Smith by the transaction of 1895 lost or forfeited all right to fall back upon the lien of the released deeds of trust, in the event the lien he took in lieu of them be declared, at the instance of defendants, of no effect. The question is discussed as a form of subrogation, but it seems to us that, more properly speaking, it is a question whether the original valid lien will be considered as preserved to the creditor under such circumstances.

The transaction in 1895 consisted of the surrender by Smith of the two $3000 notes and a release of the deeds of trust relating to them, and the taking of a deed from Clarkson and wife to Smith, with subsequent reconveyance by Smith to them, they giving him three notes with vendor's lien, made up chiefly of what was then due on the said two $3000 notes. There was evidence to show that they proposed such a transaction, but if there had been no such evidence, to our mind the fact that they were actors in the matter would be equivalent to the same thing. The verdict, in view of the court's charge, finds that the notes sued on were executed in part for the purpose of discharging the $3000 debt secured by the deed of trust of 1892, and that it was intended by the parties that Smith, in the transaction of 1895, should be secured in the payment of same by a lien on the land. The transaction of 1895 can not be regarded as the involuntary act of defendant. It appeared that Francis Smith in this transaction took up the notes (which he had transferred) and delivered the notes and deed of trust and releases thereof to Clarkson. The leading fact is undisputed, viz., that Smith, holding the original notes and deeds of trust, surrendered and released them in a transaction with de-

fendants, in consideration for a corresponding amount of the three notes in question, taking from them a lien, first in the form of mortgage and afterward in the form of vendor's lien, as security for the same. We are unable to see any real difference, in the rights and relation of the parties, between this transaction and one in which defendants might have procured a third party to advance money and pay off and obtain releases from Smith, giving the third party other notes therefor with a lien. Mustain v. Stokes, 90 Texas, 358. So far, therefore, as the first mortgage of $3000 is concerned, it having been given while Mrs. Clarkson was a widow and valid as to the interest she could mortgage, there was no error in the decree giving plaintiff a lien to the extent of said note. We do not regard it as a matter of any importance that the parties, or either of them, may have had it in mind by means of the transaction in 1895 to obscure or get away from a question of homestead.

In regard to the cross-assignments numbers 1 and 2, we think there was evidence to warrant a submission of the issue whether or not Graham was an innocent purchaser for value of the notes. There were circumstances tending to show that the transfer to him was not real.

The only cross-assignment briefed is the seventh. It reads: "The verdict of the jury in failing to find that the plaintiff was entitled to a foreclosure on the property for the full amount of the vendor's lien notes sued on, was contrary to the law and the evidence in this: That defendants failed to prove that the notes sued on were a simulated transaction to cover a lien upon the homestead; that the property in controversy was the homestead of W. M. Clarkson and wife at the time the second loan was made; and that plaintiff did not pay value for the notes sued on, or that he had notice of the defendants' defenses.

The last of these grounds has been disposed of in what has been said under the first and second cross-assignments. Upon the other subjects there was testimony to warrant the jury in concluding as they did.

The description of the three notes executed in 1895, in the statement of facts, does not show that they called for 10 per cent attorney's fee. But there is a clear admission of record (the admission made to obtain the right to open and conclude the argument) that they were as alleged in the petition, if the answer itself does not amount to such an admission. The court, we think, was warranted in treating these notes as providing for such fee. But in respect to the $3000 note of 1892, for which the foreclosure was granted, there is nothing pleaded (by appellant), admitted, or proved, to show that it contained a provision for attorney's fee, and for this reason the judgment should be reformed.

The verdict was against D. M. Clarkson for the amount of the notes sued on with foreclosure against "defendant" for the amount of the note given in 1892. The decree protects Mrs. Clarkson against execution by providing that no execution be issued against her for any balance remaining after the sale of the property, and therefore no error prejudicial to her appears from the forty-fifth assignment of error.

*Affirmed.*

ON MOTION FOR REHEARING.

In disposing of the case we reformed the judgment so as to eliminate from plaintiff's recovery on the note of 1892 any attorney's fee. This was done under the thirty-third assignment of error. · We now believe we were mistaken in holding that it does not appear that the note provided for an attorney's fee. In appellants' motion for new trial, which is of course a part of the record, there is a recognition that the three notes sued on, and also the note of 1892, contained a provision for such fee. We refer to paragraph 12 of the motion. The statement of facts is not so drawn as to expressly negative the existence of such provision in the notes. The record disclosing in the form of an admission by appellants that the notes provided for attorney's fee, and the judge having before him the notes, we would not ,be warranted in holding that he erred in rendering judgment for attorney's fees, or in reversing the judgment in that respect. Further, we are inclined to agree with appellee's counsel, that as to the note of 1892, the appellee's brief does not complain of excessiveness of the judgment by reason of attorney's fees, but upon other grounds.

We doubt the correctness of our considering as evidence appellants' admission of record made for the purpose of obtaining the privilege of opening and closing argument. In view of what is stated in the above paragraph, it was not necessary to do so, and we withdraw what is said on the subject in our former opinion, leaving the question open.

In regard to the matter of opening and concluding the argument we will add to what we have already said, that no injury appears to have resulted to appellants from the ruling of the court. All material conflicting issues of fact submitted were resolved in favor of appellants. The only matters in which appellee prevailed might, in our opinion, have been expressly so directed by the court as matters of law resulting from the testimony.

Appellees in their argument filed in support of their motion for rehearing show the calculation by which the amount of the judgment for $5208.33 was reached, and it appears that interest was calculated upon the unpaid interest notes. Appellants complain of this, for the alleged reason that there was no evidence that said interest notes bore interest.

The thirty-third and forty-third assignments of error are broad enough to reach the excessiveness of the judgment for any reason. But the above objection to the judgment is not specified. On the contrary, the statement under said thirty-third assignment declares that said interest notes bore interest at 10 per cent per annum from maturity, and such is a proper construction of the part of the record referred to. At any rate, this statement shows that no such point as this was urged or relied on.

The motion for appellee is granted, and the judgment of the District Court will be affirmed. Appellants' motion is overruled.

*Affirmed.*

Writ of error refused.