CHICAGO, R. I. & G. RY. CO. v. FORRESTER.

(Court of Civil Appeals of Texas. April 13, 1911. Rehearing Denied May 11, 1911.)

1. APPEAL AND ERROR (§ 1033*) — REVIEW— HARMLESS ERROR—ERRORS FAVORABLE TO PARTY COMPLAINING.

Appellant cannot complain that the court in an instruction free from affirmative error un-

conditionally authorized a verdict for it upon a given state of facts, though some of the assumed facts were not in evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4056–4058; Dec. Dig. § 1033.*]

**2. TRIAL (§ 252*)—INSTRUCTIONS — APPLICABILITY TO EVIDENCE.**

Under Rev. Civ. St. art. 4560k (Sayles' Ann. Civ. St. Supp. 1906, p. 485), providing that a railroad company may not plead assumption of risk based on knowledge by an employé of the defect, where the employé gave reasonable notice of such defect to the employer, or where a person of ordinary care would have continued in the employ with knowledge of the defect, an instruction that the verdict should be for plaintiff if he gave the notice mentioned in the statute was erroneous, where there was no evidence that he had given any notice.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 596–612; Dec. Dig. § 252.*]

**3. APPEAL AND ERROR (§ 1031*) — REVIEW—HARMLESS ERROR—PREJUDICE AS A GROUND OF REVERSAL.**

When an error has been committed in the trial either in the admission of evidence or in a charge to the jury, the judgment should be reversed, unless it clearly appears that no injury has resulted.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4038–4046; Dec. Dig. § 1031.*]

**4. TRIAL (§ 296*)—INSTRUCTIONS—CURE BY OTHER INSTRUCTION.**

An instruction on assumption of risk by an employé erroneous in that it submitted an issue as to the giving of notice to the employer of a defect known to the employé, where there was no evidence of notice, is not cured by a correct special instruction on contributory negligence which assumes that plaintiff gave no notice, since the two issues were separate and distinct.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 705–713; Dec. Dig. § 296.*]

**5. MASTER AND SERVANT (§ 295*)—ASSUMPTION OF RISK—INSTRUCTIONS.**

Under Rev. Civ. St. art. 4560k (Sayles' Ann. Civ. St. Supp. 1906, p. 485), providing that the defense of assumption of risk by a railroad employé shall not be available where the employé had opportunity before the injury to give notice of the defect and did give reasonable notice, an instruction that if the engine of which plaintiff was engineer was defective, and "at the first opportunity" plaintiff notified the railroad company of the defect, there was no assumption of risk, is erroneous, as it leaves the jury to conclude that a notice given by the engineer at the end of his run and after the injury could be considered.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1168–1179; Dec. Dig. § 295.*]

**6. APPEAL AND ERROR (§ 1066*) — REVIEW—HARMLESS ERROR—INSTRUCTIONS.**

In an action by a locomotive engineer for injuries, an instruction on notice of defect and assumption of risk which is erroneous, in that it submits the issue whether the engineer gave the railroad company notice of the defect before the end of his run, where there is no evidence that such notice was given, is not cured by evidence which makes an issue as to whether or not the defect existed at the beginning of the run and was known to the company, where the engineer himself testified that there was no apparent defect when he started.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 1066.*]

**7. DAMAGES (§ 132*)—EXCESSIVE DAMAGES—PERSONAL INJURIES—LOSS OF HEARING.**

In an action by a locomotive engineer for injuries resulting from a leak of steam in his engine in consequence of which his hearing was entirely lost, a verdict for $25,000 reduced to $15,000 by the trial court is excessive.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 178, 372–385; Dec. Dig. § 132.*]

Appeal from District Court, Tarrant County; R. H. Buck, Judge.

Action by W. W. Forrester against the Chicago, Rock Island & Gulf Railway Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

N. H. Lassiter and Robert Harrison, for appellant. Smith, Turner & Bradley, for appellee.

HODGES, J. This appeal is from a judgment awarding damages to the appellee, Forrester, for personal injuries which he claims to have sustained. It is alleged that on November 23, 1908, and prior thereto, Forrester was a locomotive engineer employed in the service of the appellant railway company; that on the evening of the date last mentioned he started out on his run from Ft. Worth, Tex., to Waurika, Okl., a distance of about 110 miles, in charge of engine No. 1501; that during this run the boiler of the engine leaked steam, which collected in the cab, causing him to contract a cold, which resulted in the loss of his hearing. Forrester testified that he had never used this engine before that occasion; that, when he left Ft. Worth, it was in apparently good condition, but when he reached Paradise, a station about 36 miles north of Ft. Worth, he discovered that the boiler was leaking steam, and that steam was collecting in the cab, where he was riding; that as he proceeded farther north the leakage became worse, until finally he could with difficulty see the fireman; that, as the atmosphere grew cooler towards nightfall, the steam became condensed on the walls and top of the cab, and his clothing thereby became saturated with moisture to such an extent that he was chilled and caused to take a severe cold. He further testified that this condition of the engine continued and grew worse until he reached the end of his run some time near midnight; that he then retired for the night. When he arose the next morning he had every evidence of a severe cold, and his hearing was practically gone. Other testimony offered by him upon the trial supported his contention that his hearing was defective at that time, and that by reason of that condition he was unable to pursue his former line of business, that of operating a railway locomotive. It is claimed that the appellant was negligent in furnishing him a locomotive with a defective boiler, one that leaked steam to an unusual and dangerous extent. The defense

mainly relied upon was that the engine was in good repair when it started out on this particular trip, and that whatever defects subsequently developed were those usually incident to the service in which it was employed, and, further, that Forrester's defective hearing was a condition of long standing resulting from a chronic disease from which he had been suffering for a number of years previous to that time. The testimony upon those two issues was conflicting. Upon a trial before a jury a verdict was rendered in favor of Forrester for the sum of $18,000 actual damages and $7,000 exemplary damages. The court, however, required a remittitur of all the exemplary damages and of $3,000 of the actual damages, and a judgment was finally entered for the sum of $15,000 against the appellant. From that judgment this appeal is prosecuted.

Numerous errors are assigned, all of which have been carefully considered; but we shall confine the discussion to those which we think injuriously affected the appellant upon the trial.

Objection is made to the ninth and tenth paragraphs of the court's charge, which are as follows:

"(9) If you do not find that the defendant or its employés whose duty it was to remedy the same knew of said defect in the boiler, if any, before said plaintiff was placed in charge of said engine, and if you find that plaintiff did not so inform said defendant or its employés authorized to have the same remedied upon the discovery by him, plaintiff, of said defect, if any, in the boiler of said engine while said plaintiff was on the road upon his trip, or if you find that a person of ordinary care and prudence would not have continued the operation of said engine upon the discovery by him of the condition in which you believe said boiler was while on said trip, then you will find that plaintiff assumed the risk connected with the operation of said engine with said defective boiler, if any, and your verdict will be for the defendant.

"(10) But if you find and believe that the boiler of the engine in question was defective, and further find that upon the discovery of said defective condition, if any, by plaintiff, that he, plaintiff, upon the first opportunity so to do, informed the defendant or the employés thereof whose duty it was to have such defects repaired, in the event you find said defendant or its employés did not know of such defects, if any, or if you find that said defendant or its employés whose duty it was to remedy said defects, if any, knew before said engine left the roundhouse at Ft. Worth of the existence of said defects, if any, or if you find that a person of ordinary care and prudence would have continued in the operation of said engine in the condition in which you believe the boiler thereof was with respect to allowing steam to escape at the time plaintiff took charge thereof, or while he was in charge thereof on said trip, then you will find that plaintiff did not assume any risk arising directly from the condition of said boiler as aforesaid, which you may find existed." These instructions were intended to guide the jury in passing upon the question of assumed risk, a defense pleaded, and an issue made important by the state of the evidence.

[1] The ninth paragraph quoted about groups a state of facts which, if found to exist, the jury is told would authorize a verdict for the defendant. There was no affirmative error, to say the least, in this paragraph. The appellant cannot complain because the court unconditionally authorized a verdict for it upon a given state of facts, even though some of them were not in evidence.

By the next paragraph, the tenth, is submitted to the jury a group of facts which, if found to be true, required a determination in favor of the plaintiff upon the issue of assumed risk. The principal objection to this portion of the charge seems to be that the first part submits as a controverted issue a fact of which there was no evidence—as to whether appellee reported the condition of the boiler while en route. Forrester's own testimony established the following facts: When he left Ft. Worth with engine No. 1501, it was in apparently good condition, and did not begin to leak steam till he arrived "along about Paradise," a station 36 miles distant from Ft. Worth, and that there were a number of other stations along the route between Paradise and Waurika, the end of his division. It was also shown that at Paradise and other stations along the line there were telegraph offices maintained by the appellant, by means of which Forrester could have informed the proper officials at Ft. Worth of the condition of his engine, and could have secured relief from its further use. There is no evidence that he made any attempt to communicate with those officials by that means; on the contrary, the record makes it reasonably certain that he did not, and that he gave out no information as to that condition till he reached Waurika. He says that he was carrying what is termed "manifest freight," which is described as perishable matter, and was required to be gotten through on schedule time. Article 4560k of the Revised Civil Statutes (Sayles' Ann. Civ. St. Supp. 1906, p. 485) is as follows: "That in any suit against a person, corporation or receiver operating a railroad or street railway for damages for the death or personal injury of an employé or servant, caused by the wrong or negligence of such person, corporation or receiver, that the plea of assumed risk of the deceased or injured employé where the ground of the plea is knowledge or means of knowledge of the defect and danger which caused the injury or death shall not be available in the follow-

ing cases: First, Where such employé had an opportunity before being injured or killed to inform the employer or a superior entrusted by the employer with the authority to remedy or cause to be remedied the defect, and does notify or cause to be notified the employer or superior thereof within a reasonable time, provided it shall not be necessary to give such information where the employer or such superior thereof already knows of the defect. Second. Where a person of ordinary care would have continued in the service with the knowledge of the defect and danger, and in such case it shall not be necessary that the servant or employé give notice of the defect as provided in subdivision 1 hereof." The obvious purpose of this statute was to relieve the character of employés there referred to from the effects of the common-law rule regarding the assumption of risks in those instances where the defects and dangers are known to the servant in advance of the injury. Two distinct situations or conditions are provided for. One (the second named in the statute) is where a person of ordinary care would have continued in the particular service with a knowledge of the existence of the defect and danger with which he is confronted. In such an instance, the servant is not required to give notice to the employer in order that he may escape the charge of having assumed the risk. The other is where the defect and danger are such that no person of ordinary prudence would continue in the particular service with a knowledge of their existence. Here the servant is relieved if before being killed or injured he has an opportunity to notify the employer or its proper agents of the existence of the defect and does give such notice. But in such situations notice is not essential where the employer knows beforehand of the defective condition.

[2] Under the evidence in this case, the only grounds upon which the appellee could escape the charge of having assumed the risk resulting from the defective condition of the engine upon the occasion in question was upon a finding by the jury that a person of ordinary care would have continued in that service with a knowledge of the defect and danger. The other provision of the statute had no application, for the reason that there was no evidence whatever that any notice was given by Forrester till after he reached the end of his journey, at which time the injury had been sustained, and any notice then given would have been too late to entitle him to the benefit of the statutory immunity. Therefore, in presenting that issue to the jury, the court submitted one not raised by the evidence. The question, then, is, Does the error require a reversal of the judgment? It does unless we can say that it clearly appears that no injury resulted to the appellant. T. & P. Ry. Co. v. McCoy, 90 Tex.

266, 38 S. W. 36; G. C. & S. F. Ry. Co. v. Rowland, 90 Tex. 369, 38 S. W. 758; M., K. & T. Ry. Co. v. Hannig, 91 Tex. 347, 43 S. W. 508.

[3] In the first case cited above the court said: "It has frequently been held reversible error to submit in a charge to a jury an issue not made by the evidence, unless it is clear that the jury was not misled thereby." In the last case cited the judgment was reversed upon the ground that improper evidence had been admitted, and, after discussing its probable effect upon the jury, the court concluded as follows: "The rule is that in such a case, in order to hold that the error does not require a reversal of the judgment, it ought clearly to appear that no injury could have resulted from the admission of the evidence." The foregoing decisions seem to establish the rule that when an error has been committed in the trial of a case, either in the admission of evidence or in the charge to the jury, the judgment should be reversed, unless it "clearly appears" that no injury has resulted to the opposing party. Counsel for appellee insist that for two reasons the error here complained of should be held harmless: First, because the court in a special charge given at the request of the appellant treated as undisputed the fact that no notice had been given by Forrester; and, second, because it is manifest from the entire record that the appellant and its servants knew of the defective condition of the boiler, that there was no occasion for reporting it, and the jury must have based their verdict upon the finding that Forrester was not negligent in continuing his trip under the circumstances.

[4] Considering these propositions in their order, we will notice first the legal and probable effect of the special charge referred to as curing the error. That charge was as follows: "You are instructed that contributory negligence on the part of an injured person proximately contributing to cause the injury will defeat a recovery by him of damages, even though the defendant in the suit was also guilty of negligence proximately contributing to the injury. If you believe that the failure of Mr. Forrester while on the road to report the extent to which his engine was leaking while on the trip on November 23d was negligence on his part which proximately contributed to cause his injury, if he was injured, you will return a verdict for the defendant." It is true that this special charge assumes as a fact that Forrester failed to make any report of the condition of his engine during the progress of his run from Ft. Worth to Waurika, and submits to the jury the question as to whether or not he was guilty of negligence in not making such a report, and whether such negligence was the proximate cause of his injury. But this was only a charge upon a certain phase of the issue of contributory negligence, and

furnished no rule for guiding the jury in determining the question of assumed risk. The two defenses were separate and distinct, and in some respects rested upon different facts. The jury might have concluded that a prudent man situated as Forrester was would have reported the condition of his engine while en route, but that he probably would not have been relieved of its operation, and hence that the failure to so report was not the proximate cause of the injury. It is difficult to understand how a correct instruction upon one issue can cure a misdirection as to another. To hold that a proper instruction is corrective of an erroneous one is necessarily to assume the existence of a conflict more or less embarrassing to the jury. How are they in such cases to decide which instruction shall have the greater weight?

[5] However, the vice of the charge complained of does not rest altogether upon the construction that it submitted as a disputed issue of fact whether or not Forrester while en route reported the condition of his engine. The court told the jury that, if he reported it "upon the first opportunity so to do," he did not assume the risk. This authorized the jury to conclude that from the facts in evidence they might find that notice of the defect had been seasonably given by Forrester. They were also warranted in concluding from the reading of this charge that the only notice of which there was any evidence, that given at the end of the run and after the injury had been inflicted, was in the opinion of the court one which might be regarded as given upon the first opportunity, and might be treated by them as sufficient. In other words, the jury might by this charge have been led to conclude that the notice given by Forrester at the end of his run could be considered in passing upon the issue of assumed risk. If such considerations entered into the deliberations of the jury upon that question, then clearly the charge injuriously affected the appellant.

[6] The remaining ground relied on for considering the error harmless is equally untenable. From testimony offered by the appellee, it appears that an engineer by the name of Colburne brought engine No. 1501 into Ft. Worth from a run on the morning of the same day it was taken out by the appellee in the evening; that Colburne reported this engine as being in bad condition; and that among the defects pointed out by him in that report was its leaky condition. Testimony offered on the part of the appellant tended to show that those defects were repaired and the boiler subjected to a hydrostatic test, and that, when Forrester took charge of the engine, it was in good condition. This evidence made an issue for the jury upon the question as to whether or not

the defect existed at the time and was known to the appellant. Forrester himself testified that, when he started out, the engine and boiler were in apparently good condition.

[7] The verdict rendered upon the trial of this case was considered by the court below so excessive that he required the filing of a remittitur of $10,000 as a condition upon which he would refuse a new trial. As the case comes to us the amount is still so large, considering the character of the injuries shown by the evidence, that we should not feel inclined to permit it to stand, even if the judgment were not otherwise subject to attack, without requiring an additional reduction. This situation indicates that the jury was influenced by some considerations which should not have existed. A verdict so grossly in excess of what may justly be regarded as reasonable compensation for such personal injuries as those here shown, bears upon its face the evidence of an error which remittiturs alone may not be able to cure.

The judgment is reversed, and the cause remanded.

LEVY, J., not sitting.