CASE 36—PETITION EQUITY—DECEMBER 4.

Moore v. Thompson &c.

100 231
109 405

APPEAL FROM MERCER CIRCUIT COURT.

1. PRINCIPAL AND SURETY—MORTGAGE TO INDEMNIFY SURETIES—RE- LEASE.—Where the maker of accommodation notes executes to the payee and his sureties a mortgage to indemnify them as sure- ties and indorser, and upon the maturity of the notes, they are renewed by the accommodation indorser and all the original sure- ties except one, the name of the original principal being also left off, the mortgage to indemnify them is not released, it appearing that the renewal notes were given for the same debt.

BELL & BELL AND C. A. HARDIN FOR APPELLANT.

1. A mortgage executed by John Chas. Thompson to sureties on a note of his and John B. Thompson, to secure said sureties from all loss as such, is released when the notes are renewed and John Chas. Thompson's name left off. (Letcher v. Bank, 1 Dana, 84; Castleman v. Holms, 4 J. J. M., 3; Berry v. Stockwell, 10 B. M., 300; Breckinridge v. Churchill, 3 J. J. M., 12; Stone v. McCon- nell, 1 Duvall, 56.)

2. If the notes were paid by John B. Thompson, one of the princi- pals, the sureties having paid nothing, their mortgage security is gone.

JOHN B. THOMPSON FOR APPELLEES.

1. The mortgage was worded so as to show its intention to indem- nify the mortgagees as the sureties on the indebtedness created, and not merely on the notes signed simultaneously with its exe-

cution; and it further expressly provided that it was to be an indemnity for any renewals of the debt, and an indemnity to any other persons who might become bound as sureties in such renewals.

2. The plea of limitation is a personal and privileged plea, to be interposed or not, as a bar, at the option of the debtor, and a creditor will not be permitted to plead it for him.

3. The mortgage being a separate and independent contract from the notes, would not be barred for fifteen years; and even if the five year statute applied in this case, the appellees begun proceedings on the mortgage within that time.

4. The appellant's rights were not affected by the order of court directing the payment to the sureties of enough of the proceeds of the land to discharge their liability for the debt before they had in fact paid it, not having been objected to by the mortgagor.

CHIEF JUSTICE PRYOR DELIVERED THE OPINION OF THE COURT.

The facts of the record show that on the 4th day of April, 1888, John Charles Thompson, then living in Wyoming, executed to Forsythe, Magoffin and Sumrall a mortgage to indemnify them as his sureties on three several notes, for $2,300 each, executed on the 4th day of April of the same year.

The negotiation for raising the money was made through the appellee, John B. Thompson, to whom the notes were made payable and by him endorsed and the notes discounted by the Fayette National Bank, and the proceeds forwarded to John C. Thompson at his home in Wyoming. The notes were not paid at maturity, and when due were renewed from time to time, with the name of the *principal*, John C. Thompson, left off.

John B. Thompson, the endorser, was, as the proof shows, a mere endorser for the obligor, and as to him

was a surety, but as to those who had signed the notes as sureties he agreed with them to stand as principal; so in fact all the parties to the notes were the sureties of John C. Thompson.

It is insisted that John B. Thompson was a joint obligor, or that the money on the notes was obtained for the use of both John and Charles Thompson in some joint or partnership enterprise, but the testimony is otherwise; but if, as insisted by appellant, a joint liability between the Thompsons, it does not affect the questioninvolved here.

After the renewal of the notes for nearlytwo years in the Fayette National Bank the notes were again renewed, but discounted with the Boyle National Bank at Danville.   On these notes John B. Thompson was principal and the others as sureties, with perhaps a change as to one of the sureties, and these notes are still unpaid.

In January, 1891, D. L. Moore, having a debt against John C. Thompson, sued out an attachment and had it levied on the mortgaged land, and by amended pleadings the beneficiaries of the mortgage, the sureties in the original transaction, were made defendants.   They answered, setting up their mortgage lien, and claiming priority over the attaching creditor, while the latter claimed that the debt had been paid, or such a novation as operated to release the lien.   The mortgage is executed to Forsythe, Sumrall and Magoffin, with the condition that "when the notes are paid and all the parties as sureties and endorsers saved harmless, and all renewals thereof," the mortgage to be void.

It is conceded that this liability of the sureties, who were adjudged priority in the court below, originated from the execution of the three notes to the Fayette National Bank in the year 1888, and each renewal shows the same liability, less the discount, continuing down to the last renewal in the Danville bank. In other words, the sureties renewed this paper from time to time, making it payable to the original endorser, and their liability for the same debt has never ceased to exist, and why their equity is not superior to that of an attaching creditor we can not well see. If they had paid the original liability at maturity the lien could have been enforced, and the evidence of the fact that these renewal notes were for the same debt and identified in such a way as to remove all doubt on that subject, the mere fact that the name of the original obligor was left off, or that of another surety added, did not have the effect of depriving the appellees of their lien secured by the mortgage. That instrument was properly authenticated and recorded;was notice to creditors and purchasers of the existence of the lien

It was held by this court in Burdett v. Clay, 8 B. M., 295, where a note had been assigned, a *new* note taken by the assignee, payable to himself, was no release of his lien by mortgage. As in this case it is the same debt, and the lien has not been surrendered or discharged.

In the case cited the original debt secured by mortgage to Hyatt was renewed and made payable to Hyatt's son-in-law, and Burdett became bound as

surety in the place of Letcher, with J. M. Myers, one of the original sureties, who had been secured by the mortgage in his liability, the mortgage also having been given to secure the debt. In that case, as in this, there was no intention or purpose to destroy or waive the mortgage lien, and the sureties were properly given priority in the proceeds of sale.

Judgment affirmed.