RUSHING et al. v. CITIZENS' NAT. BANK OF PLAINVIEW et al.

(Court of Civil Appeals of Texas. Amarillo. Nov. 29, 1913. Rehearing Denied Jan. 10, 1914.)

1. MORTGAGES (§ 480*)—FORECLOSURE — VERDICT—EFFECT.

Where the cross-complainant claimed land under conveyances made to him by his codefendants subsequent to the execution of a deed of trust, a finding that the deed of trust should be foreclosed necessarily negatived all claims asserted by defendant, and authorized the judgment of foreclosure.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1399; Dec. Dig. § 480.*]

2. MORTGAGES (§ 151*)—DESCRIPTION—SUFFICIENCY.

Where a deed of trust described the property as 160 acres known as the J. H. B. homestead survey, that description was not so vague as to render the deed of trust invalid as against one not a bona fide purchaser.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 307, 309–311, 314–329, 332–336; Dec. Dig. § 151.*]

3. APPEAL AND ERROR (§ 736*)—ASSIGNMENTS OF ERROR—SUFFICIENCY.

In an action on notes, where it appeared that defendants at first executed a note for $10,000, and later, desiring an extension agreed to split the debt by executing one note for $8,000 and another for $2,000, plus accrued interest, an assignment of error to the effect that the verdict and judgment for the sum of $8,000 was erroneous because the evidence showed that such sum could not be recovered on the $10,000 note which had been superseded, and that it could not be recovered on the $8,000 note because the note was not completed by the signature of all of the defendants, was multifarious.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3028, 3029; Dec. Dig. § 736.*]

---

**4. NOVATION (§ 4*)—PAYMENTS (§ 67*)—NOTES —PRESUMPTIONS.**

Where notes are taken for a precedent debt, it will not be presumed that they are taken as payment or as a novation, and the burden is on the party asserting it.

[Ed. Note.—For other cases, see Novation, Cent. Dig. § 4; Dec. Dig. § 4;* Payment, Cent. Dig. §§ 162, 189–194, 198; Dec. Dig. § 67.*]

**5. BILLS AND NOTES (§ 430*)—RENEWAL NOTES —EFFECT.**

Defendants jointly executed a note for $10,-000, and some of them, desiring an extension, agreed to split the debt by executing two notes, one for $8,000, to be executed by three of the defendants, and the other for $2,000 and accrued interest. The $8,000 note was executed by only two of the defendants, but it and the lesser note were accepted by the creditor bank, which also retained the $10,000 note. *Held*, that the giving of the two renewal notes did not discharge the original note for $10,000, and hence a recovery could be had on it as well as the note for $2,000, which was executed according to the agreement; for a renewal note is never considered as discharging an old one when to do so would mean the loss of the debt and security.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1251–1256; Dec. Dig. § 430.*]

**6. ESTOPPEL (§ 78*)—EQUITABLE ESTOPPEL— WHAT CONSTITUTES.**

A bank to which the several defendants were indebted on a $10,000 note agreed to extend the time of payment upon their executing two notes, one for $8,000 and the other for $2,000, plus accrued interest. The $8,000 note was not signed by all of the defendants according to the agreement, but the bank accepted it and extended the time. *Held*, that an attempt to collect the $2,000 note did not estop the bank to assert its right to collect $8,000 under the old $10,000 note, which it had not canceled.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 204–210; Dec. Dig. § 78.*]

**7. ESTOPPEL (§ 78*)—EQUITABLE ESTOPPEL— WHAT CONSTITUTES.**

A note is not considered as paid and discharged by another given for it, where the debt would by such construction be lost, because then the intention to receive the second as a discharge would be prima facie rebutted, and hence, where a bank to which defendants were indebted on a $10,000 note discounted that note in New York, and later accepted two notes, one for $8,000 and the other for $2,000, plus accrued interest, and discounted the renewal notes at another point, that conduct does not estop the bank from recovering on the original note; the $8,000 note not having been signed by all of the parties.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 204–210; Dec. Dig. § 78.*]

**8. USURY (§ 117*)—ACTIONS—EVIDENCE—SUFFICIENCY.**

In an action on a note wherein defendants set up usury, evidence *held* sufficient to support a finding that the usury occurred in previous transactions, which had been settled by the execution of the note in question.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 328–340; Dec. Dig. § 117.*]

**9. USURY (§ 66*)—EFFECT—NEW SECURITY.**

When a usurious obligation is settled and abandoned to a new security taken for a debt lawfully due, such new security rests upon a consideration purged of usury, and is valid.

[Ed. Note.—For other cases, see Usury, Cent. Dig. § 139; Dec. Dig. § 66.*]

**10. BILLS AND NOTES (§ 493*)—USURY (§ 113*) —BURDEN OF PROOF.**

In an action on notes, where defendants set up usury and want of consideration, the burden of proving those defenses is upon defendants.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1652–1662; Dec. Dig. § 493;* Usury, Cent. Dig. §§ 308–323; Dec. Dig. § 113.*]

**11. EVIDENCE (§ 462*)—DELIVERY—EVIDENCE.**

Where a deed of trust in favor of a bank is delivered to one of its officers, defendants claiming that it was to be held by him and never delivered, parol evidence is admissible to explain the purpose of depositing the instrument.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2134–2139; Dec. Dig. § 462.*]

**12. DEEDS (§ 58*)—DELIVERY—WHAT CONSTITUTES.**

The mere placing of a deed, in which a corporation is named as grantee, in the custody of one of its officers, is not a delivery; the question of a delivery being one of intention.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 130–135; Dec. Dig. § 58.*]

**13. MORTGAGES (§ 69*)—OFFICERS—DUTIES.**

Where the directors of a bank required defendants, who were indebted to the institution, to give security, an agreement whereby the bank's vice president should accept deed of trust on defendants' property, but not deliver it to the bank, merely having it as ostensible security to satisfy the directors, is invalid, and the vice president will be treated as accepting the deed for the benefit of the bank, not being allowed to violate his duty to his principal.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 166; Dec. Dig. § 69.*]

**14. MORTGAGES (§ 69*)—DELIVERY—ESTOPPEL TO DENY.**

Where defendants, who were indebted to a bank, executed a deed of trust to secure their indebtedness, in compliance with a demand of the directors of the bank for security, but agreed with the vice president that he should retain the deed and never deliver it to the bank, they are estopped from setting up their fraudulent agreement, and the court may properly treat the deed as delivered.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 166; Dec. Dig. § 69.*]

**15. APPEAL AND ERROR (§ 728*)— ASSIGNMENTS OF ERROR—BRIEFS.**

An assignment of error not correctly copied in the brief will be disregarded.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3093; Dec. Dig. § 758.*]

**16. APPEAL AND ERROR (§ 742*) — ASSIGNMENTS OF ERROR—STATEMENTS.**

Assignments of error, followed by statements which are merely counsel's version of what the record shows, will be disregarded.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

**17. APPEAL AND ERROR (§ 1056*)—REVIEW— HARMLESS ERROR.**

Under rule 62a for the Courts of Civil Appeals (149 S. W. x), providing that no judgment shall be reversed for an error of law unless the appellate court shall believe that the error probably caused the rendition of an improper judgment, the improper exclusion of opinion testimony of defendant's principal witness will be deemed harmless, where his testimony as to many other matters was disregarded by the jury.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4187–4193, 4207; Dec. Dig. § 1056.*]

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

**18. APPEAL AND ERROR** (§ 882*)—REVIEW—ESTOPPEL TO ALLEGE ERROR.

The erroneous admission of evidence is not reversible error, where appellants elicited the same facts from the same witness.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3591–3610; Dec. Dig. § 882.*]

**19. BILLS AND NOTES** (§§ 110, 534*)—ATTORNEY'S FEE—CONTRACT.

A stipulation in a note for 10 per cent. attorney's fee is valid, and will be enforced when the note is collected by suit without a showing of the amount paid by the holder to his attorney.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 221, 1946, 1947; Dec. Dig. §§ 110, 534.*]

**20. BANKS AND BANKING** (§ 270*)—NATIONAL BANKS—USURY—STATUTES.

Under Rev. St. U. S. § 5198 (U. S. Comp. St. 1901, p. 3493), providing that in case a usurious rate of interest has been paid, the person by whom it has been paid, or his representatives, may recover it back by an action for that purpose, payments of usury cannot be offset in a suit by a national bank on other indebtedness.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 1023–1053; Dec. Dig. § 270.*]

**21. BILLS AND NOTES** (§ 477*)—DEFENSES—COUNTERCLAIM.

In an action on notes, an answer alleging that defendants had an opportunity to sell the land which they deeded in trust to secure the notes, but that the vice president of the creditor bank induced them not to sell, but to accept a loan upon the land to their damage, is properly stricken, not setting forth any counterclaim; there being no allegation of fraud, duress, or oppression.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1524, 1525, 1558; Dec. Dig. § 477.*]

Appeal from District Court, Hale County; L. S. Kinder, Judge.

Action by the Citizens' National Bank of Plainview against J. J. Rushing and others, who impleaded J. B. Posey. From a judgment for plaintiff and the impleaded defendant, defendants appeal. Affirmed.

See, also, 160 S. W. 337.

Madden, Trulove & Kimbrough, of Amarillo, and Graham & Graham and Fred. C. Pearce, all of Plainview, for appellants. Dalton & Russell and Mathes & Williams, all of Plainview, Turner & Wharton, of Amarillo, and W. D. Benson, of Lubbock, for appellees.

HALL, J. This action was brought in the district court of Hale county, by the Citizens' National Bank of Plainview, against J. J. Rushing, W. B. Rushing, and B. E. Rushing, as individuals and as composing the firm the Rushing Land Company, and also against J. E. Rushing and E. B. Hughes. The last-named defendant, being trustee in two deeds of trust, disclaimed. The Rushings impleaded J. B. Posey, the first vice president of the appellee bank, and by cross-action sought to recover the damages against him and appellee bank.

The first amended original petition, upon which the case was tried, alleged, in substance that on June 1, 1910, the defendants J. J., W. B., and B. E. Rushing executed and delivered to plaintiff bank their note for $10,000, bearing 10 per cent. interest per annum from maturity, stipulating for 10 per cent. attorney's fees, secured by a mortgage on certain real estate, executed by J. J., W. B., and B. E. Rushing, and naming defendant Hughes as trustee; that about November 1, 1910, an agreement was made dividing the debt into two parts of $8,000 and $2,000 respectively, in which sums new notes were to be executed. It was further agreed that the $8,000 note should be signed by J. J., W. B., and B. E. Rushing, and the $2,000 note should be secured by deed of trust upon section 17, block W, Houston East & West Texas Railway Company lands, held by W. B. Rushing. It is further alleged that J. J. Rushing, who was the father of W. B. Rushing, B. E. Rushing, and J. E. Rushing, agreed to procure the signature of B. E. Rushing, who at that time was residing at Lubbock, Tex., to the $8,000 note. It is further alleged that the $8,000 note was never signed by B. E. Rushing; that instead of a note for $2,000 one for $2,755.30 was executed, made up of $2,000 of the $10,000 note, together with interest due at that time on the $10,000 note, interest on the $2,000 note, and another item of indebtedness due the bank by W. B. Rushing; that W. B. and J. J. Rushing executed said $2,755.30 note, which, as stated above, was secured by the deed of trust on said section 17; that because B. E. Rushing never executed the $8,000 note, it never became a valid and binding obligation; that the purpose of the agreement above mentioned in dividing the $10,000 note into two notes was to secure an extension of the indebtedness, and by the terms of the agreement $8,000 of said $10,000 note was extended for 180 days from November 1, 1910, and the remaining $2,000 plus the items above stated, making a total of $2,755.30, was extended to January 29, 1911, and was subsequently, upon payment of interest thereon, extended to April 28, 1911. By the allegations in this amended petition, the plaintiff sought to recover of J. J. Rushing, W. B. Rushing, and B. E. Rushing, $8,000 and interest of the $10,000 note, and of J. J. and W. B. Rushing, $2,755.30 and interest thereon, together with attorney's fees on both notes. Foreclosure was sought of the deed of trust dated June 1, 1910, given to secure the said $10,000 note, to the extent of $8,000 thereof, with interest and attorney's fees and foreclosure of the deed of trust of November 22, 1910, on section 17 was also sought, to secure the $2,755.30 note. The amended petition also alleged that J. E. Rushing was asserting some pretended claim of title to the lands, and alleged that his title, if any, was subsequent and subordinate to

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

the deeds of trust, and asked foreclosure as to him. By their third amended original answer, the defendants demurred generally to plaintiff's petition, and specially excepted to so much of the same as sets up plaintiff's cause of action to be three notes, dated June 1, 1910, for $1,000, November 1, 1910, for $8,-000, and November 2, 1910, for $2,755.30, respectively, because the amended petition shows that the plaintiff does not claim an indebtedness on all of these notes. Special exception was urged to so much of the amended petition as declared upon the $10,000 note, because it appeared that the $8,000 note and the $2,755.30 note were executed in lieu of and for the purpose of superseding and canceling said $10,000 note. They further specially excepted to that part of the pleading which declared upon the $8,000 note, because it was to have been signed by the three makers of the $10,000 note, and had never in fact been signed by one of them, viz., B. E. Rushing. The question of usury was also raised by special exception. There was a general denial, and defendants specially pleaded that the $2,755.30 note was without consideration, except to the extent of $281.-71, and as to this sum the note and the mortgage on section 17 constituted a real estate loan by a national bank, and were void; that plaintiff was not entitled to recover on the $8,000 note because it was to have been signed by the three makers of the $10,000 note, and that plaintiff, in violation of its agreement to do so, failed to procure the signature of B. E. Rushing thereto, and that B. E. Rushing was not bound upon the $8,-000 note because he had not signed the same. It is further alleged that the $10,000 note was without consideration in whole or in part, for the reason that it included usurious interest charges, and further that it was a part of a real estate loan transaction between plaintiff, a national bank, and defendants, and was therefore ultra vires and illegal. By their cross-action and plea in reconvention, the defendants sought to recover double the amount of usurious interest paid, and prayed in the alternative to have the amount of such usurious payments deducted from the note. There was a further cross-action by defendants against both the plaintiff and J. B. Posey for fraud and injury to them in their business. The pleading further alleges that J. E. Rushing, specially answering for himself, is the owner of the land referred to in plaintiff's petition, same having been conveyed to him July 22, 1911, for a valuable consideration. Posey for himself, pleaded limitations, and plaintiff bank, by first supplemental petition, interposed special exceptions and general denial. The case was tried before a jury, resulting in a verdict for the plaintiff, as follows: "We; the jury, find for the plaintiff, against the defendants, J. J., W. B., and B. E. Rushing, the sum of $8,000, with 10 per cent. interest from April 28, 1911, to date and 10 per cent. attorney's fees on principal and interest, and further for the foreclosure of the deed of trust signed by the said Rushings, dated June 1, 1910. We further find for the plaintiff against W. B. and J. J. Rushing the amount of $2,755.30 note, less $74.03 usury, with 10 per cent. attorney's fees on $2,681.27, and for the foreclosure of the deed of trust securing it, dated November 22, 1910. We, the jury, find for the defendants as to the pleas of usury that in the $2,755.30 note there is $74.03 usury. We, the jury, as instructed by the court, find against the defendants on their plea for damages for loss of business"—and judgment was entered accordingly.

[1] Appellant's first assignment of error is that the court erred in rendering judgment against the defendant J. E. Rushing and his cross-action for canceling the deed of trust and quieting his title to the lands in controversy, because the verdict of the jury did not dispose of said cross-action, and does not support the judgment in this respect. The pleadings of J. E. Rushing raise no issue different from that raised by the pleadings of his codefendants. He sought the cancellation of the deed of trust upon the ground that it was not intended to take effect, and that it had been superseded by operation of law, and by reason of the transaction of November 22, 1910. The verdict of the jury, finding in favor of the validity of the deed of trust, was necessarily a finding against J. E. Rushing's claim to the land.

In Jones v. Ford, 60 Tex. 127, Willie, Chief Justice, said: "This court has heretofore held that, where a finding of the jury under the issues submitted to them could not possibly have been arrived at without also finding another fact not expressed, but necessarily included, in the verdict, judgment could be rendered as if that fact had been positively found. * * * Under the pleadings in this case and the charge of the court, if Ford owed nothing for the construction of the houses upon the lots mentioned in the pleadings, he was entitled to recover them; any verdict of the jury, therefore, that negatived such indebtedness, and especially that found to be in his favor, including a finding that he was entitled to the possession of the property." In the instant case, J. E. Rushing claimed the land under certain conveyances made to him by his codefendants, subsequent to the execution of the deed of trust. A finding that the deed of trust should be foreclosed necessarily negatived all claim asserted by him, and the judgment of the court declaring that fact was proper. Bownman v. Saigling, 111 S. W. 1082; O'Brien v. Hillburn, 22 Tex. 616; Brown v. Montgomery, 31 S. W. 1079; Deleshaw v. Edelen, 31 Tex. Civ. App. 416, 72 S. W. 413; Bowles v. Belt, 159 S. W. 885. J. E. Rushing offered no evidence in support of his cross-action, which in effect constituted an

abandonment thereof. Elmendorf v. Schuh, 62 S. W. 797; Beale's Heirs v. Johnson, 45 Tex. Civ. App. 119, 99 S. W. 1045.

[2] Under the second assignment of error appellants contend that the court erred in foreclosing the deed of trust lien on the J. H. Bell homestead survey, because the same was not sufficiently described in the instrument. The deed of trust described the property as follows: "160 acres known as the J. H. Bell homestead survey." If this description was insufficient, it was rendered more specific by the description contained in the deed from B. E. Rushing to J. E. Rushing, which is as follows: "160 acres, the J. H. Bell homestead survey, Patent No. 394, vol. 29." J. E. Rushing did not claim the land as an innocent purchaser, and, as between him and the bank, we think the description in the deed of trust was sufficient. Being sufficient as to the parties to it, and J. E. Rushing not being an innocent purchaser, he stood upon no more advantageous ground than did his father and brothers. Kelly v. Howard, 94 S. W. 379.

[3] The third assignment of error is to the effect that the verdict and judgment for the sum of $8,000 are erroneous because the uncontroverted evidence showed that $8,000 could not be recovered upon the $10,000 note, since the last-named note had been displaced, superseded, and substituted by two notes —one for the sum of $8,000, dated November 1, 1910, and the other in the sum of $2,755.30, dated November 22, 1910; that the plaintiff had accepted and used the two substituted notes in lieu of said $10,000 note; that said sum could not be recovered on the $8,000 note against J. J., W. B., and B. E. Rushing, because the $8,000 note was never completed by the signature of B. E. Rushing; that he never agreed to be bound thereon, and because plaintiff pleaded that the $8,000 note never became a valid and binding obligation upon any of the defendants. This assignment is multifarious, and the propositions under it are not all germane to the assignment, and two of the propositions show that the printer has omitted parts of them.

[4-7] The fourth assignment insists that the court erred in rendering judgment against B. E. Rushing for the sum of $8,000, because the verdict is without evidence to support it, and because the testimony showed that the $10,000 note, dated June 1, 1910, signed by J. J., W. B., and B. E. Rushing, was afterwards superseded, annulled, and substituted by two notes for $8,000 and $2,755.30, respectively, both notes being executed by J. J. and W. B. Rushing, and neither of them signed by B. E. Rushing, and because there was a new consideration entering into the $2,755.30 note, and that the plaintiff accepted and used said two notes, in lieu of any substitution of said $10,000 note. This assignment is also multifarious, and is followed by two propositions, but will be discussed in connection with the third assignment, su-

pra. In our opinion, appellants' proposition is not sustained by the decisions of our Supreme Court. Plaintiff alleged that as the note for $10,000 was approaching maturity, the makers thereof requested an extension, and it was agreed that two notes should be given, one for $8,000 and the other for $2,000, and that a deed of trust on section 17, block W, should be given as additional security for the $2,000 note, and that the remaining $8,000 due upon the $10,000 note should, as before, be secured by the first deed of trust, dated June 1, 1910, and that the new note for $8,000 should be signed by W. B., B. E., and J. J. Rushing. Plaintiff alleges that J. J. Rushing agreed to have B. E. Rushing sign the $8,000 note and the defendants allege that Posey undertook to procure his signature thereto. It is immaterial who agreed to present the note to B. E. Rushing for his signature. Under the terms of the agreement, the $8,000 note was incomplete, and could not form the basis of an action against any one until it had been signed by B. E. Rushing. We think the plaintiff had the right to have B. E. Rushing's name signed thereto before it could be held to have abandoned its rights under the $10,000 note, even if it had been agreed that the $10,000 note should be canceled and surrendered upon the execution and delivery of the $8,000 note—and the record shows no such agreement. The finding of the jury, in effect, is that the execution of the two notes in lieu of the $10,000 note was for the purpose of extending the time of payment of the debt evidenced by the $10,000 note. If the $8,000 note had been signed by B. E. Rushing, and delivered (and the $10,000 note surrendered), then clearly the plaintiff's right of action should have been based upon it, together with the $2,755.30 note. Since, in its incomplete condition, no action could be based upon it, in our opinion, plaintiff bank had the right to recover that amount of the debt by suit, based upon the $10,000 note, because the last-named note could not be superseded and annulled until the $8,000 note should become a valid and binding obligation. Eight thousand dollars of the debt, evidenced by the $10,000 note, was not in contemplation of law, nor under the agreement, renewed or extended until the execution and delivery of the note for $8,000. That this was not done was no fault of the plaintiff. The incomplete note for $8,000 was certainly not a payment of so much of the $10,000 note, nor could it be held to be a novation. If notes are taken for a precedent debt, it will not be presumed that they were taken as payment or as a novation, and the burden is on the party asserting it to prove his contention. Gimble & Sons v. King, 43 Tex. Civ. App. 188, 95 S. W. 7; Scott v. Atchison, 36 Tex. 76. On the contrary, when the original note is retained by the creditor as in this case, it should be presumed that he held it, or the renewals, as

collateral and he had the right to sue upon either. Dan. Neg. Inst. (5th Ed.) 1266, 1266a, 1266c. The renewal note is never considered as discharging the old one when to do so would mean the loss of the debt and security. Id. par. 1266b; Crumbaugh v. Kugler, 3 Ohio St. 544; Davis v. Thomas, 66 Neb. 26, 92 N. W. 187. It has been frequently held that a mere change of the evidence of the indebtedness does not affect the rights of the creditors. Porter v. Metcalf, 84 Tex. 468, 19 S. W. 696; Heath v. First National Bank, 19 Tex. Civ. App. 63, 46 S. W. 123. When the $2,755.30 note had been executed and secured by a deed of trust upon section 17, block W, it changed the evidence of so much of the $10,000 indebtedness which had before then been evidenced by the $10,000 note, and had the effect of rendering the $10,000 note to that extent inoperative. And we think, further, that until the remainder of the debt, amounting to $8,000, had been evidenced by a valid note, executed in accordance with the agreement, it rested in and was evidenced by the $10,000 note, less the amount which had been merged in the $2,755.30 note. Moore v. Thompson, 100 Ky. 231, 37 S. W. 1042; Willis v. Sanger, 15 Tex. Civ. App. 655, 40 S. W. 229.

In the last-cited case it is said: "The renewal of the notes by the mortgagor did not affect the security. Jones on Mort. § 355. No change in the form of the indebtedness, or in the mode or time of payment, will discharge the mortgage. A mortgage secures a debt and not the note or other evidence of it. No change in the form of the evidence or the mode or time of payment—nothing short of actual payment of the debt or an express release—will operate to discharge the mortgage. Id. § 924."

In Wright v. Wooters, 46 Tex. 380, it is said: "Taking a new note with security, for a note secured by a mortgage, is not a waiver of the mortgage, unless expressly intended to have that effect. * * * The taking of a new note, with different sureties, did not of itself, unless so intended, operate as a release or waiver of a mortgage. The general rule is that a mortgage to secure a promissory note 'will remain security for any new note given in payment of the former one, unless there is an intention to the contrary.'"

In Clarkson v. Graham, 21 Tex. Civ. App. 355, 52 S. W. 269, it was held that "where the holder of a note secured by a deed of trust surrenders the same, and releases the deed of trust, and takes a deed from the maker of the note to the property, and then reconveys it to him, taking vendor's lien notes made up chiefly of what was then due on the original note surrendered, the holder of the original note does not by such transaction lose or forfeit the right to fall back upon the lien of the released deed of trust in the event the vendor's lien be declared of no effect, though the purpose of such transaction may have been to evade the homestead law."

In our opinion the $2,755.30 note, having been executed in part performance of the original agreement, was a renewal of so much of the debt and was a proper basis for the plaintiff's action, since it represented part of the original obligation. For us to hold that the failure of B. E. Rushing to sign the note for $8,000 intended to renew that much of the original indebtedness would deprive plaintiff of the right to recover either upon such note, or that amount of the $10,000 note would be in effect saying that the defendants could profit by their own wrong, and would open a door for fraud. B. E. Rushing had never (so far as the record shows) agreed to the renewal and extension, and the bank had no means of forcing him to do so. Plaintiff consented to it with the express understanding that he should also sign the renewal note, and until this was done there could be no renewal as to all the makers, nor binding agreement to extend $8,000 of the indebtedness. The makers of the original note were all three principals, and we cannot subscribe to a doctrine which would permit two of them to induce their creditor to enter into another agreement which the third debtor could render fruitless by refusing to sign and at the same time annul the first obligation as to all of them. It was not contemplated that B. E. Rushing should sign the $2,755.30 note, and that part of the agreement has been executed by the delivery of the note upon the one part, and the extension of the time of payment of the whole debt for a period of 180 days upon the other. Appellants having received the benefit of the extension and by the payment of interest on the $2,755.30 note, and by reason of having asked and received a further extension of the time of payment thereof, are estopped from questioning the binding effect of such obligation. Appellants insist that the bank must stand by the transaction of November 22, 1910, in toto or repudiate it in whole; that it cannot take advantage of it in part and repudiate it in part, but if it wishes to go back to the $10,000 note and sue upon that, it must return the $8,000 note and the $2,755.30 note, and give up the mortgage on section 17, securing it, putting the parties back to just where they were before the transaction of November 22d. It would be impossible to put the parties in status quo because the defendants have already received the benefit of the extension of time of payment, and before the suit was filed. There is no question of rescission in it. Plaintiff has accepted the contract in so far as defendants have performed it, and, instead of trying to rescind, is endeavoring by this suit to enforce it, or so much thereof as the defendants have consented to make enforceable. We know of no rule of law, and

appellants have cited us to none, under which appellee's effort to collect the $2,755.30 note against J. J. & W. B. Rushing would preclude or estop it from collecting the balance of the debt due it from them and B. E. Rushing, jointly and severally, by proceeding on the old note. We think the above-quoted authorities sustain us in this view; nor do we think the defendants who have neither paid nor offered to pay can be heard to complain so long as judgment is not rendered against them for more than the amount of their indebtedness. J. J. Rushing and W. B. Rushing did not execute the $2,755.30 note with any understanding that their liability should be predicated upon the execution of the $8,000 note by B. E. Rushing. Then what right have they to complain because the bank is seeking to recover a part of the debt for which they are jointly and severally liable, from B. E. Rushing, by suit upon the old notes? B. E. Rushing is in no way bound upon the $2,755.30 note, then why should he complain because the plaintiff bank is seeking to recover of J. J. and W. B. Rushing that part of the debt represented by it, and for which he was jointly and severally liable? It is our judgment that until he executes the $8,000 note with J. J. and W. B. Rushing, perfecting it as an obligation against all three, his liability to plaintiff, as evidenced by the old note for $10,000, continues. The appellants insist that the act of the bank in sending the $10,000 note to New York, and the $8,000 note to St. Louis, and rediscounting them in banking transactions there, estops them from filing suit upon either of the notes, but we are not referred to any decision announcing such a rule; and we think the plaintiff's action is nothing more than evidence tending to show the intention of the parties, and throwing light upon the effect of the renewals.

As said in Daniel on Negotiable Instruments (5th Ed.) § 1266b: "Even where a note is considered as paid and discharged by one given for it, as a general rule, the case is excepted where the debt would, by such construction, be lost, because then the intention to receive the second as a discharge would be prima facie rebutted. This view would apply where the first note is secured by mortgage." This question, however, seems to be definitely settled against appellants by the verdict of the jury, the effect of their finding being that the partial execution of the $8,000 note was not intended to be a payment of so much of the debt as was still represented by the note for $10,000. What is here said also disposes of appellant's fifth, sixth, seventh, and eighth assignments of error.

[8] The ninth, tenth, and eleventh assignments of error raise the question of usury and the sufficiency of the court's charge upon that issue, and will be considered together. Under the ninth assignment it is insisted that the evidence showed usury in the various items which were merged in the $10,000 note by the transaction of June 10th. The verdict of the jury sustains the contention that usury exists in part as to the $2,755.30 note, and have found against appellants, otherwise upon the theory, we presume, that the transaction of June 10th settled and abandoned all usury in the various notes and overdrafts of the parties preceding that date.

The tenth assignment complains of the action of the court in refusing to give special charge No. 6, requested by the defendants, which is as follows: "You are charged that the law against usury is to be liberally applied to prevent usury openly charged or concealed in any disguise and device that may be resorted to, if any, either by the lender or borrower, or by the consent of both for putting a usurious transaction into a form which makes it appear to be free from usury, and must be disregarded and the transactions treated in accordance with its real nature and substance. If you believe, therefore, from the evidence, that the $10,000 note, dated June 1, 1910, was made to include the balance of the indebtedness of J. J., W. B., and B. E. Rushing, and the Rushing Land Company, evidenced by their overdrafts and notes, after applying the payment of $4,740, you will so treat the transaction, notwithstanding any different form, if any, which may have been given, or attempted to be given, it by the manner in which the papers may have been passed or the book entries made."

The eleventh assignment complains that the court erred in the eighth paragraph of the general charge upon this issue. After submitting to the jury in the fourth, fifth, sixth, and seventh paragraphs of the general charge, the law of usury applied to the facts as alleged in the answer and cross-action of the defendants, the court proceeded in the eighth paragraph to charge the jury as follows: "You will therefore determine from the evidence whether the transaction of June, 1910, was for the purpose of making a new loan to pay off certain indebtedness of the defendants Rushing, including all the indebtedness owed by them to plaintiff, or whether it was simply a continuation of the old indebtedness, and intended so to be by the parties, then such transaction would not extinguish the usury, if any, existing in the prior indebtedness. But you are charged in this connection that if you find from the evidence there was usury in any of the notes or overdrafts existing at the time the transaction of June, 1910, was made, but that such transaction was intended, not as a continuation of the old indebtedness, but was a new indebtedness transaction, and that the proceeds of a part thereof of the note dated June 1, 1910, were used in the payment and extinguishment of all prior indebtedness to plaintiff, then you are charged that all such indebtedness so paid was purged of usury,

if any existed, and would not taint or impair the new note for $10,000, dated June 1, 1910."

Posey, the official of the bank, who represented it in this transaction, gives this version of it: "When that $10,000 note was signed Mr. Rushing and his son W. B. came into the bank, I think late in the afternoon of June 10th, and asked me for a memorandum of their various indebtedness to the bank, and I gave it to them, and they went out with it. The next morning Mr. Rushing came down and asked me to fix up a note for $10,000, and that he and his sons would sign it. He wanted it for six months, and I said, 'Mr. Rushing, I cannot do that. The board of directors would not stand for it two minutes.' Then the question of collateral came up, and he did not object to giving me collateral. The only question was he was so deeply in debt, he told me, if possible, that he was going to sell something in the course of a few days, and that he would rather not incumber any one else, only the land; that he had given a deed of trust on it to Mr. Heard for the $1,200 loan. Well, I objected to that, and I told him, 'Mr. Rushing, you will have to give us something that is not incumbered, because the directors won't stand for that on account of the deed of trust to Mr. Heard,' and I suggested to him at the time that he give me a chattel mortgage on his personal property, what he had, and finish it up with a deed of trust or sort of second lien on this land, and I asked him if he did not have something else that was clear, and I think he said that he had a half section that was unincumbered, and when he brought up the question of recording it, it is my recollection that I told him, if he had any prospects of selling any of it within a short time, that I would hold up the recording of the deed of trust for a few days, and then he asked me to fix up the note. That was on June 11th, and he took the note out and had the boys sign it, and we settled it on that day—the day after I submitted that memorandum of indebtedness. I think it was a little later when the deed of trust was fixed up. When they came back I do not remember whether all three were present or not. It is my recollection that Mr. W. B. Rushing came down and gave me some data before the note was returned, and I do not remember whether they were all together, but I do know that the note was turned in, and we took a check that went to the credit of J. J. Rushing's account. In regard to Mr. Rushing's statement as to what his object and purpose in making the $10,000 note, dated June 1st, was, after he negotiated the loan with Mr. Heard, he did not get as much money as he expected. He wanted to borrow enough—get enough money, to pay off the bank, and I told him I believed I could find him a man that would loan him the money. Some time a little prior to June 1st he was considerably distressed about his

business. He came to me and told me that he was not going to have as much money as he expected. It is my impression that he told me Mr. Heard was holding up a little of his money. Any way he was going to need about $10,000. He said he wanted to pay what he owed the bank, and he owed some outside debts that he wanted to pay. I told him we would help him on that, and that was about all that was said until Mr. Rushing came down on June 10th and got this memoranda, and then on the morning of the 11th he came into the bank and got the note fixed up. He said he thought he was going to need about $10,000, and I told him, if he did not go past that, that we could accommodate him, and when the loan was procured it was placed to the credit of J. J. Rushing. I did it on his instructions, of course. If he had instructed me differently, I would have so handled it. I always tried to please him."

The record further discloses as a part of that transaction that the money was all placed to the credit of J. J. Rushing, the father of W. B., B. E., and J. E. Rushing, and that he gave the checks for the various amounts payable to the other parties, W. B., and B. E. Rushing, and the Rushing Land Company, sufficient to cover their various items of indebtedness to the bank, and leave on deposit a balance to the credit of each of them, except B. E. Rushing; that there was on June 11th placed to the credit of J. J. Rushing $9,500, being the amount of the $10,000 note, less the $500 interest, and there was also placed to his credit Ft. Worth exchange for $4,740, being the amount of the loan from Heard. The check to W. B. Rushing, given by him, was for $4,060.43, which paid his indebtedness to the bank and left him a balance on deposit of $100. To B. E. Rushing a checks was given for $201.65 to pay his overdraft to the bank. The check to the Rushing Land Company was for $3,008, which paid its overdrafts and a note for $750, due the bank, leaving a balance to its credit of $200. After giving of all the checks, J. J. Rushing had a balance to his credit of $374.-02. The contention on the part of the defendants is that this transaction of June 10th and 11th out of which the $10,000 note arose, and which by agreement was dated June 1st, was simply a renewal of former indebtedness, and that the usury in the overdrafts and old notes which had been merged in the $10,000 note tainted to that extent the renewal note. It seems that the jury adopted the appellee's version of the transaction as related by Posey, and his evidence is sufficient to support the verdict.

[9] It is the law as announced in 39 Cyc. 1004: "When a usurious obligation is settled and abandoned and a new security taken for the debt lawfully due, with lawful interest thereon, such new security rests upon a consideration purged of usury, and is valid. The fact that the lender by such settle-

ment retains the usury already paid will not taint the new contract." Stout v. Bank, 69 Tex. 384, 8 S. W. 808.

The transaction of June 11th resulted in a note signed by J. J. Rushing and his two sons, W. B. and B. E. Rushing. As a result of the execution of this note, J. J. Rushing was enabled to discharge the various items of indebtedness evidenced by overdrafts and notes of himself, his sons, and the Rushing Land Company. The objection urged by appellant in the third proposition under the tenth assignment to the eighth paragraph of the general charge is that the court instructed the jury that "the test to be applied to the transaction was the intention of the parties" is not sound. The court did not instruct the jury at all as to the intention of the parties to charge or contract for usury, but submitted the question as to whether the execution of the new note was a separate transaction, or was merely intended to be a continuation of the old indebtedness. These assignments are overruled.

[10] The twelfth assignment is: "The court erred in giving to the jury the second charge, reading as follows, to wit: 'In this case the burden of proof was upon the defendants to establish the allegations in their answer by a preponderance of the evidence." The general rule is that the burden of proof rests upon the party who has the affirmative of any particular issues, unless expressly assumed by the other party. Ry. Co. v. Cowser, 57 Tex. 293; Howell v. Hanrick, 88 Tex. 383, 29 S. W. 762, 30 S. W. 856, 31 S. W. 611. The appellants' answer and cross-action consisted of a plea of no consideration, or failure of consideration, for the $2,755.30 note, except as to $281.27, alleging all overplus to be usury; denial on behalf of B. E. Rushing of the execution of the $8,000 note; setting up specifically the usury in the note for $10,000; and by cross-action sought to recover upon the ground of usury; a denial that W. B. and B. E. Rushing ever delivered the deed of trust of June 1, 1910, to the bank, and alleging that Posey obtained it from them fraudulently. Paragraph 19 of the joint answer of the defendants was J. E. Rushings' cross-action. The burden of proving the allegation when it is charged that usury has either been paid or is provided for in the contract rests upon the party alleging it. Cotton States Building Co. v. Peightal, 28 Tex. Civ. App. 575, 67 S. W. 524; Rutherford v. Smith, 28 Tex. 322. The burden was also upon the defendants to show a want of or failure of consideration for the notes sued upon. Masterson v. Heitmann, 38 Tex. Civ. App. 476, 87 S. W. 227; Gutta Percha & Rubber M'nfg. Co. v. Cleburne, 102 Tex. 36, 112 S. W. 1047. In Thompson v. Hines, 59 Tex. 527, it is said that if a deed is found in the grantee's hands, a delivery and acceptance is always presumed, and this presumption would have the effect of throwing upon de-

fendants the burden of proof in establishing that the delivery to Posey, as the officer of the bank particularly authorized to make loans, was not a delivery in fact to the bank. Defendants' allegation that the $10,000 note had been discharged, like a plea of payment or release, was a plea in confession and avoidance. Marley v. McAnelly, 17 Tex. 658. The issue made by the pleadings of the parties as to who should procure the signature of B. E. Rushing to the $8,000 note is of no consequence and proof of the allegation that J. B. Posey obtained the deed of trust from defendants fraudulently certainly rested upon the latter. It cannot be contended that the burden of proving the facts set up in J. E. Rushing's cross-action was not upon him. G., H. & S. A. Ry. Co. v. Herring, 102 Tex. 100, 113 S. W. 521; Pughe v. Coleman, 44 S. W. 576. Therefore the court did not err in the charge that the burden was upon the defendants to prove the facts in their answer.

We think the court was correct, and the 12th assignment is overruled.

Appellee, by repeated objections to the condition of appellant's brief, insists that a number of the assignments should not be considered by this court, and objects to the thirteenth assignment because it is not in accordance with the rules, and not properly briefed. The assignment itself is multifarious, confusing, unintelligible in part, and is not a verbatim copy of the paragraph as set out in the motion for new trial. It is followed by three propositions. Under the first proposition for a statement we are referred to the first proposition under the ninth assignment. Reference to the first proposition under the ninth assignment shows 11 pages of badly printed matter, the greater part of which has no bearing on this proposition. The second proposition, which challenges the correctness of the tenth paragraph of the court's charge, is followed by counsel's version of what the record shows as to the evidence, and does not contain a copy of the paragraph of the charge, and says, "For further statement, see statement under second proposition under eighteenth assignment." The statement under the third proposition is as follows: "See statement under second proposition, this assignment"; and, as we have seen, the statement under the second proposition is wholly insufficient. The references to the record are not sufficient under this assignment; only one statement containing any reference to any part of the record. The typesetting in the make-up of this brief is such that we are forced to hazard a guess at the meaning of much of the compositor's work, but notwithstanding these defects, we have decided to consider this assignment, since it involves a vital question in the case.

[11-14] The tenth paragraph of the charge is as follows: "You are charged that the execution of a deed of trust for the recited purpose of securing the indebtedness set out

therein and the delivery to the grantee or to some one for the grantee's benefit, is presumed to create a valid and binding lien on the property therein described to secure such indebtedness, and it devolves upon the party attacking such interest to show that it was never intended to take effect as a valid instrument, and you are therefore instructed to find for the plaintiff against the defendants J. J., W. B., and B. E. Rushing the sum of $8,000, with ten per cent. interest from June 1, 1911, to date, and 10 per cent. attorney's fees on principal and interest, and, further, for the foreclosure of the deed of trust signed by the said Rushings, dated June 1, 1910, unless you find from the evidence that the deed of trust was executed and delivered to J. B. Posey under an agreement between Posey and the Rushings that he, Posey, would hold it personally and would put it away among his private papers, and not make delivery to the plaintiff, the Citizens' National Bank, or to be used or claimed as an effective or delivered instrument, in which event you will find for the defendants as to the foreclosure of the deed of trust." It is insisted by appellants that this charge is upon the weight of the evidence. In Stookbury v. Swan, 85 Tex. 563, 22 S. W. 966, it is held that any charge as to a presumption arising from a given state of facts set out in the charge is upon the weight of the evidence, unless it be in those cases where the law raises a conclusive presumption.

The question raised by this assignment, as well as by the eighteenth assignment, which we will dispose of together with this, is not one of escrow, because the instrument was not deposited with Posey to be ultimately delivered to the bank upon any condition at all, but the real issue is, Has the deed of trust been delivered to the bank? We think parol evidence is admissible to explain the purpose of depositing the instrument with Posey, and, if possible, to show whether the acts claimed by appellee as constituting delivery really have that effect. It has been held that a deed in which a corporation is named as grantee is not necessarily delivered to the corporation when placed in the custody of one of its officers. So. L. Ins. Co. v. Cole, 4 Fla. 359; 16 Cyc. 574. The issue of delivery or no delivery is a question of intention and one of fact, to be determined by the jury from the evidence (Brown v. Brown, 61 Tex. 56); and ordinarily, in order to render a deed effective, it must be delivered into the control of the grantee, with the intent of the grantor that it shall become operative as a conveyance. Steffian v. Milmo National Bank, 69 Tex. 513, 6 S. W. 823; King v. Hill, 75 S. W. 550. Ordinarily the rule announced in these authorities would require a reversal of this case upon this issue. Posey denies that he took the instrument in question with any understanding whatever except such as might be implied from the execution and delivery of an instrument of this nature, containing no conditions limiting its effect. The Rushings testified that Posey took it agreeing to file it with his private papers, and that he would not deliver it to the bank or place it of record. It seems to have been given in response to a demand by the directors for some security to the $10,000 note. Admitting the version of the transaction given by the Rushings to be true, then Posey, in accepting the instrument with any such understanding, has violated the duty which he, as managing officer of the bank, owed to it. We cannot subscribe to any such transaction, and the delivery upon terms plainly illegal, and the acceptance of the instrument by Posey in violation of his duty, will be disregarded and the delivery of the deed held absolute. Posey cannot be permitted to violate his duty to his principal, if he so intended. 16 Cyc. 574; Devlin on Real Prop. (3d Ed.) vol. 1, § 316. The jury accepted Posey's version of the transaction, which is that there was a simple and effective delivery of the deed. If we accept the Rushing statement as true, then they had delivered the instrument to Posey, with the fraudulent purpose of pacifying and deceiving the bank's directors, who were demanding bona fide security for their debt. Having delivered it to Posey with a fraudulent intent and purpose, which we can neither respect nor recognize, the Rushings are estopped from claiming that the delivery is other than absolute, and as they intended the directors to take it, and as the directors did accept it. So, upon either theory, the court could not have erred in assuming outright that the deed of trust was delivered, and the error in the tenth paragraph is therefore harmless, and these remarks also dispose of the twenty-seventh, twenty-eighth, and twenty-ninth assignments.

Having heretofore considered the matters contended for by appellant under the fourteenth assignment, it is overruled.

[15] The fifteenth assignment is not correctly copied in the brief, and is therefore disregarded. Hayes et al. v. Groesbeck et al., 146 S. W. 327; Bray v. The Bank, 145 S. W. 290.

The sixteenth assignment of error does not point out the error complained of, if any, in the charge, and the statements following the propositions are not sufficient to require its consideration.

[16] The seventeenth and twenty-second assignments are in violation of the rules requiring references to the record. The statements following them are not statements of fact from the record, but are merely counsel's version of what the record shows.

[17] It is urged under the nineteenth assignment of error that the court erred in excluding the testimony of W. B. Rushing offered by these defendants, to the effect that "the papers passed and the book entries, made at the time the note for $10,000 offered in evidence was given, were the proper papers to be passed and the proper entries to

be made, according to the rules and practice and system of bookkeeping obtaining in banking institutions, to evidence a settlement by which the indebtedness of J. J., W. B., and B. E. Rushing and the Rushing Land Company were all consolidated and the payment of $4,740 made thereon and the balance carried forward and renewed in said note of $10,000, as shown by bill of exceptions No. 11, because said testimony was material and competent as expert opinion evidence, and was not subject to the objections mentioned in said bill of exceptions, which is here referred to as a part hereof." The objection urged to this testimony was that it was a conclusion of the witness. If the court erred in this ruling, it was not such error as requires a reversal under rule 62a for the Courts of Civil Appeals (149 S. W. x), providing that no judgment shall be reversed on appeal, nor new trial ordered in any cause, on the ground that the trial court has committed an error of law in the course of the trial, unless the appellate court shall be of opinion that the error complained of amounted to such a denial of the rights of appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. Reference to this witness' testimony shows that he was the principal witness for the appellants, and that in its scope his testimony covers all the material issues in the case. Since the jury found against the appellants, where this witness had testified positively to facts, we are inclined to believe that a mere expression of an opinion from him, if admitted, would have had little weight with it, and under the rule we overrule this assignment.

[18] The twentieth assignment of error is predicated upon the action of the court in permitting the witness, Von Struve, to testify that it was usual and customary for all banks in Plainview to charge interest monthly at the rate of 12 per cent. per annum on overdrafts. This was objected to because the testimony was immaterial and irrelevant. We think this was error, but the qualification placed upon the bill by the learned trial judge shows that evidence of a similar nature was deduced by defendants from the same witness, and the assignment is overruled.

The twenty-first assignment is overruled upon the grounds stated by us in passing upon appellant's third assignment.

[19] The twenty-third assignment challenges the action of the court in rendering judgment for attorney's fees, because there was no evidence that the plaintiff had ever employed attorneys and placed either the note sued on in their hands for collection, or that it had ever agreed to pay said attorneys anything for the collection of the notes, or for the bringing of this suit. Neither was there any evidence that the attorney's fees stipulated for in the notes was reasonable compensation for such services. This question is decided adversely to appellant's contention, in Bank v. Robinson, 104 Tex. 166, 135 S. W. 372.

[20] The twenty-fourth assignment complains of the action of the court in sustaining plaintiff's first special exception, to the effect that defendant's answer is insufficient in so far as it seeks to recover certain usurious interest items theretofore paid by defendants to plaintiff. Reference to the exception itself shows that the assignment incorrectly states the effect. The exception was not to that portion of the answer which sought to recover usurious interest paid, but was to so much of the answer as endeavored to offset the bank's claim by the amounts of usury alleged to have been paid. In a suit by a national bank to collect indebtedness due it evidenced by notes, the defendant cannot offset any amount already paid as usury against plaintiff's demand. Rev. Stat. U. S. § 5198 (U. S. Comp. St. 1901, p. 3493); Huggins v. Bank, 6 Tex. Civ. App. 33, 24 S. W. 926; Trabue v. Cook, 124 S. W. 455; Haseltine v. Central National Bank, 183 U. S. 130, 22 Sup. Ct. 49, 46 L. Ed. 118.

[21] Paragraph No. 6½ of appellee bank's supplemental petition, excepting to all that part of the answer of the defendants which alleges that they had the opportunity to sell this land at about the price of $37.50 per acre, but J. B. Posey objected to such proposal, and urged defendants not to sell it, and that the defendants were induced to obtain the loan on said lands, was sustained by the court, and we think properly so. This ruling is the basis of appellant's twenty-fifth assignment of error. The pleading does not show that Posey was guilty of any fraud, duress, oppression, or other improper act which could for the basis of appellant's action. The allegation is that, contrary to defendant's wishes, he persuaded them not to sell the land, and to accept a loan of $10,000 upon it from his bank. From our own experience, we doubt if the allegation could have been sustained by the proof. If true, such generosity is so rarely met with in the reports of adjudicated cases and in the business walks of life that we are not willing to discourage such benevolence by holding that it comes within the condemnation of any known rule of law.

Finding no reversible error in the record, the judgment is affirmed.